26 C.C.P.A. (Patents)

### HILL et al. v. CASLER et al.
### Patent Appeals No. 4086.

Court of Customs and Patent Appeals.
Feb. 27, 1939.

C. L. Parker, of Washington, D. C., for appellants.

N. D. Parker, Jr., of Washington, D. C., for appellees.

Before GARRETT, Presiding Judge, and BLAND, HATFIELD, LENROOT, and JACKSON, Associate Judges.

GARRETT, Presiding Judge.

This is an appeal in an interference proceeding arising in the United States Patent Office. The decision of the Board of Appeals which we are called upon to review is one affirming the decision of the Examiner of Interferences awarding priority to appellees who are joint inventors. Their application is senior to that of appellants. Broadly, the invention relates to a power gear shifting mechanism for a motor vehicle.

As originally declared, the interference embraced five counts which appellees copied into their application filed November 8, 1933, from a patent inadvertently granted to appellants, as joint inventors. February 11, 1936, upon an application filed April 11, 1935. Subsequently two additional counts were added. Appellants were placed under order to show cause why judgment on the record should not be entered against them in view of the fact that their preliminary statements as to both sets of counts named dates for conception subsequent to the filing date of appellees' application. Appellants filed motion to dissolve alleging failure of appellees' application to disclose the subject-matter of the counts. The motion was denied by the Primary Examiner and, in due course, judgment on the record was entered by the Examiner of Interferences. Hill and Hey appealed to the board as to all the counts but later withdrew the appeal as to counts 1, 2, 3, and 5. The board dismissed the appeal as to the counts so withdrawn and affirmed the examiner as to the remaining counts, 4, 6, and 7. Hill and Hey thereupon took appeal to this court as to counts 4, 6, and 7, but in their brief before us the appeal was withdrawn as to counts 6 and 7. So, there remains for our consideration only count 4 which reads:

"Count 4. A gear shifting mechanism for a motor vehicle having a transmission provided with shifting means, comprising differential pressure power means for moving said shifting means, control valve mechanism for establishing differential pressure in said power means to move said shifting means selectively to a plurality of operative positions, said control valve mechanism including a plurality of control valves, and fluid pressure means independent of said power means for selectively controlling the operation of said valves."

In the decision of the Primary Examiner, denying the motion to dissolve, there was given the following general description of the invention:

"A conventional arrangement of gears is provided for the transmission, but in place of the usual manually operated gear shift lever, there is provided a pivoted lever adapted to be engaged selectively with the shift rods of the transmission. This lever can also be moved longitudinally to move the shift rods longitudinally. Thus the lever is the full equivalent of the conventional gear shift lever which is moved transversely of the shift rails to select one of them and then moved longitudinally to move the rail longitudinally. Instead of a manual operation of this lever there is provided a piston and cylinder for moving it transversely and a second piston and cylinder for moving it longitudinally. These pistons and cylinders are fluid actuated and the admission of fluid thereto is controlled by an arrangement of valves, which in turn are operated by fluid pressure from the source, the flow of pressure to the valves being selectively controlled by a remotely situated, manually operable valve."

The sole question to be determined here is the ancillary one of appellees' right to make the count. More specifically, the question at issue is whether the device described by appellees discloses "fluid pressure means independent of said power means for selectively controlling the operation of said valves," the last limitation of the count.

The drawings of both the application and the patent contain numerous figures and it was necessary to use a large number of numerals in designating the various structural features. Even the narrow issue before us has required the study of several figures to determine the manner in which the parts function. It is not deemed necessary here to reproduce the drawings.

Both the Primary Examiner and the board discussed the limitation in detail, the former saying:

"'With respect to count 4, the parties Hill and Hey contend that the count recites power means for moving the shifting

means, a control valve mechanism including a plurality of control valves for establishing differential pressure in the power means, and fluid pressure means independent of the power means for selectively controlling the operation of the control valves, and that Casler and Vorech do not disclose 'fluid pressure means independent of the power means for selectively controlling the operation of the control valves'. In reviewing the structure of Casler and Vorech, it is noted that their control valves 98, 99 are only operated by the fluid pressure means 95. It is this means which determines which one of the control valves is actuated. The power means 20 does not function in this operation and remains stationary until one or the other of the control valves has been operated to admit fluid pressure to one side or the other of the power cylinder 87. Thus it is clear that in Casler and Vorech, the fluid pressure means selectively controls the operation of the control valves and operates them independently of the power means. The power means merely acts to lap the control valves after they have been actuated by the fluid pressure means and does not act in conjunction with the fluid pressure means to control the valves."

The board, after quoting the limitation, discussed it as follows:

"The Examiner held this properly read on the Casler and Vorech disclosure in that the piston 95 of the fluid pressure device 32 constitutes fluid pressure means independent of the power means 20 for selectively controlling the operation of control valves 98, 99. This is urged as an error inasmuch as the operation of the valves 98 and 99 is dependent upon the relative movements of the piston 96 or the fluid pressure device 32 and the piston 89 of the power device 20. The support for the operating means of valves 98 and 99 is mounted on both of these pistons and the operating lever for controlling valves 98 and 99 may be operated depending on the relative movement of the two pistons above noted. However, when piston 89 is stationary, as it is at the start while piston 96 moves, then the valves 98 and 99 can be operated independently of the power means. Further, aside from such reading of the count, it is obvious that the fluid pressure device 32 is independent structurally of the power device 20 and we do not believe that count 4 should be so narrowly construed as to call for a control of operation of valves

98 and 99 by fluid pressure means independent of movement of the power device. Moreover, as explained in the Casler brief, one of the valves 98 and 99 may be operated to exhaust position while the other valve remains in exhaust position."

It is thus to be seen that the tribunals of the Patent Office concur fully with respect to the construction of the count and with respect to features of the device of appellees which meet it.

The contention on behalf of appellants concerning the issue is based upon a construction of the language which their counsel insists is the proper construction, but which, in the view of the tribunals of the Patent Office, is narrower than is warranted under the rule governing the construction of counts in interference proceedings. It appears that the count originated with Hill and Hey and the brief on their behalf apparently insists that the count should be given an interpretation limited to their teaching. We do not understand appellants to challenge the accuracy of the description given by the tribunals of the Patent Office of the manner in which the Casler and Vorech structure operates, but they challenge the application made of the terms "independent of said power means" and "controlling the operation." It is insisted that the operation of the pertinent valves in appellees' structure is not controlled by the fluid pressure device itself but by the relative movement between the piston rods in such device and the power means [20] named in the count for moving the shifting means, and that the valves cannot be "controlled" by the fluid pressure device alone. The brief goes into great detail respecting the operation of the respective devices in the effort to support the limited construction for which contention is made. These descriptions of operation have been studied by us with care, but we are not convinced that the construction given by the tribunals of the Patent Office was erroneous.

It is obvious that we have here a highly technical question respecting a quite complicated device, and it is the well settled rule that ordinarily concurring decisions of the Patent Office tribunals will not be disturbed unless it appears that they are manifestly wrong. It is true, of course, as was said by us in Bryson v. Clarke, 92 F. 2d 720, 722, 25 C.C.P.A., Patents, 719, that the rule "has no application to pure questions of law, and ordinarily it does not apply to construction of claims and counts

222

when technical questions pertaining to such claims or counts are not involved."

In the instant case, as has been said, there was complete concurrence by the tribunals below upon all questions of fact, and it seems to us that the technicalities pertaining to this count run to, or are involved in, the count's construction. In any event, appellants have failed to meet the burden of showing that the decisions below were manifestly wrong.

The appeal is dismissed as to counts 6 and 7, and as to count 4 the decision of the board is affirmed.

Affirmed.